RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0078p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

TYRONE GILBERT,

        *Defendant-Appellant*.

No. 19-3456

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:17-cr-00239-1—Solomon Oliver, Jr., District Judge.

Decided and Filed: March 11, 2020

Before: GRIFFIN, WHITE, and NALBANDIAN, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Christian J. Grostic, FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for
Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for
Appellee.

_____

### OPINION

_____

GRIFFIN, Circuit Judge.

Defendant Tyrone Gilbert seeks to suppress the fruits of a search—namely four
kilograms of narcotics, more than $100,000 in cash, a firearm, and other indicia of drug
trafficking—because the search warrant that authorized the search of his home purportedly
lacked probable cause in violation of the Fourth Amendment. Because a reasonably well-trained

officer in the circumstances presented here would not know to disregard a judicial determination that probable cause existed, the good-faith exception applies.  We therefore affirm the district court's judgment.

I.

Cleveland Police Detective Jeffrey Yasenchack observed a suspected drug transaction at an intersection known for its drug activity on August 29, 2016.  He watched Lenell Williams enter and then exit a Jeep Cherokee belonging to defendant Tyrone Gilbert within a few seconds. Williams shoved a large plastic bag into his shorts as he exited and then drove off in his own vehicle.  Yasenchack stopped Williams and recovered almost half a pound of cocaine.  Williams later pleaded guilty to state drug trafficking charges.

About two weeks later, Yasenchack saw Gilbert driving the Jeep and conducted a traffic stop.  He smelled marijuana emanating from Gilbert's vehicle, but his search only turned up a large amount of cash.  After this second encounter, Yasenchack learned that Gilbert had a lengthy criminal history, including 2006 convictions for drug trafficking, drug possession, and possessing a weapon while under disability.

Suspecting that Gilbert was once again distributing narcotics, Yasenchack began surveilling Gilbert and searching his trash.  On February 21, 2017, Yasenchack searched the trash placed outside Gilbert's residence on Rainbow Avenue in Cleveland.  He found chrome scale weights, a vacuum sealed bag and zip-lock bags (which tested negative for controlled substances).  Then, between February and April 2017, Gilbert moved to a house on Yellowstone Road in Cleveland.  On April 27, 2017, Yasenchack searched the trash at Gilbert's Yellowstone Road residence but found nothing suggestive of drug trafficking.  In June 2017, Detective Yasenchack again searched Gilbert's trash at the Yellowstone Road residence and discovered a large vacuum-sealed bag containing "crumbs" of what Yasenchack believed to be marijuana.  A field report later confirmed that the crumbs were marijuana.

Yasenchack applied for a search warrant the next day to search Gilbert's Yellowstone Road residence.  In support of the search warrant application, Yasenchack attested to the following facts: (1) he had witnessed Gilbert participate in a drug transaction on August 29,

2016, which had led to the conviction of Williams; (2) he found "a large quantity of cash" in Gilbert's vehicle following a traffic stop; (3) Gilbert had a lengthy criminal history including 2006 convictions for drug trafficking and drug possession; (4) Yasenchack surveilled Gilbert's homes many times; (5) at one point, Yasenchack had attempted to tail Gilbert's vehicle but broke off surveillance once Gilbert began driving in circles which was "a tactic drug dealers often use to determine if they are being followed"; (6) he had conducted three trash pulls over several months; and (7) the day prior to the search warrant application, he discovered "suspected marijuana crumbs" in Gilbert's trash within a large vacuum sealed bag, which he knew drug dealers often used to conceal the scent of marijuana. Yasenchack also included several boilerplate paragraphs about his training and experience in investigating drug trafficking.

An Ohio judge authorized a search warrant to search Gilbert's Yellowstone Road home, which law enforcement executed the following day. The search yielded dividends. Officers discovered nearly four kilograms of heroin (some of which was laced with fentanyl), a handgun, approximately $119,000 in cash, and other tools of the drug-trafficking trade, like a money counter, numerous cell phones, and a drug ledger.

A grand jury subsequently charged Gilbert in a three-count indictment with possession with intent to distribute heroin, possession with intent to distribute a mixed drug containing heroin and fentanyl, both in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Gilbert moved to suppress the evidence obtained from his home, arguing that the search warrant did not establish probable cause on several grounds, including that it lacked a sufficient nexus between the alleged drug activity and Gilbert's home. He also contended Detective Yasenchack's affidavit contained falsehoods or reckless misrepresentations under *Franks v. Delaware*.[1] The district court held a *Franks* hearing and denied Gilbert's motion in a written opinion. It concluded that the warrant affidavit, when viewed under the totality of the circumstances, established probable cause for the search and that Gilbert had not met his burden to establish a *Franks* violation.

---

[1]438 U.S. 154 (1978).

Gilbert then conditionally pleaded guilty to all counts, explicitly preserving his right to appeal the district court's denial of his motion to suppress. The district court sentenced defendant to a below-Guidelines sentence of 138 months' imprisonment. Gilbert now appeals only the district court's denial of his motion to suppress.[2]

## II.

"When reviewing a district court's ruling on a motion to suppress, we will reverse findings of fact only if they are clearly erroneous. 'Legal conclusions as to the existence of probable cause are reviewed de novo.' 'When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government.'" *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (brackets and citations omitted) (first quoting *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004), then quoting *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003)).

Gilbert primarily argues that the search warrant did not establish probable cause in violation of the Fourth Amendment.[3] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Whether the search warrant violates this constitutional command is debatable, and one we need not answer because we may affirm on any grounds supported by the record, even if different from the reasons of the district court. *See Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 436 (6th Cir. 2006). That is, even if defendant is correct that the district court erred in its probable-cause determination, the good-faith exception applies, so the district court did not err by denying his motion to suppress.

---

[2]Gilbert does not appeal the district court's ruling regarding *Franks*.

[3]He also briefly contends that because the municipality where he lived prohibited the public from "scavenging or salvaging refuse" set out for collection, Detective Yasenchack violated his Fourth Amendment rights by searching his trash. However, Gilbert also recognizes that the Supreme Court has held that a person has no reasonable expectation of privacy in garbage he sets out for collection. *California v. Greenwood*, 486 U.S. 35, 40 (1988). We are bound to follow *Greenwood* here. *See also Magda v. Benson*, 536 F.2d 111, 112 (6th Cir. 1976) (rejecting a Fourth Amendment argument based on a municipal anti-rummaging ordinance).

In *United States v. Leon*, the Supreme Court created an exception to the exclusionary rule for evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. 897, 905 (1984). In a break from the previously reflexive and uncompromising approach of excluding all evidence seized without probable cause, the Supreme Court established a new objective inquiry limiting suppression to circumstances in which the benefits of police deterrence outweigh the heavy costs of excluding "inherently trustworthy tangible evidence" from the jury's consideration. *Id*. at 907. "Following *Leon*, courts presented with a motion to suppress claiming a lack of probable cause must ask 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.'" *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (quoting *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008)). "Only when the answer is 'yes' is suppression appropriate." *Id.*

To aid courts in resolving this question, *Leon* outlined four circumstances in which an officer's reliance would *not* be objectively reasonable. 468 U.S. at 914–15, 923. Here, Gilbert argues for only one of those four scenarios, claiming that the search warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)).

An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a "bare bones" affidavit. *See White*, 874 F.3d at 498. "We reserve that label for an affidavit that merely 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (en banc) (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004)). In other words, the affidavit must be "'so lacking in indicia of probable cause' as to make an officer's 'belief in its existence [ ] objectively unreasonable.'" *Id.* (alteration in original) (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)).

We must take care not to confuse a bare bones affidavit with one that merely lacks probable cause. "Too often courts raise the *Leon* bar, making it practically indistinguishable

from the probable cause standard itself." *Christian*, 925 F.3d at 318 (Thapar, J., concurring). There must be daylight between the "bare bones" and "substantial basis" standards if *Leon*'s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function. *See Leon*, 468 U.S. at 906–07, 913–21; *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc). Thus, "[a]n affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding; rather, it must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *White*, 874 F.3d at 497. Otherwise, "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful," excluding evidence recovered as a result of a technically deficient affidavit serves no useful purpose under the exclusionary rule. *Davis v. United States*, 564 U.S. 229, 238 (2011) (quoting *Leon*, 468 U.S. at 909, 919). Before faulting an officer for executing a court-issued order, we must therefore find that the defects in the supporting affidavit were apparent in the eyes of a reasonable official. *Leon*, 468 U.S. at 921 ("[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." (quoting *Stone v. Powell*, 428 U.S. 465, 498 (1976) (Burger, C.J., concurring))).

Here, Yasenchack's affidavit was sufficiently meaty to avoid being labeled bare bones. Gilbert argues that Yasenchack "obtained the warrant based on his suspicions alone." Yasenchack's affidavit, however, contained several verifiable facts, including that: (1) Gilbert was party to a large drug transaction on August 27, 2016, and possessed "a large quantity of cash" in his vehicle about two weeks later; (2) law enforcement discovered "a large black vacuum bag with suspected marijuana crumbs," "recent mail addressed to Tyrone Gilbert," and "[b]lack rubber gloves with residue" at his residence the day prior to seeking the search warrant; and (3) Gilbert had previously been convicted of drug trafficking and possession. Indisputably, these are facts. And importantly, these are facts that establish "*some* connection" between the suspected drug trafficking and Gilbert's Yellowstone Road home, in light of the marijuana taken from Gilbert's trash at that address and his demonstrated history of drug trafficking. *White*, 874 F.3d at 497; *see also United States v. Abernathy*, 843 F.3d 243, 251–52 (6th Cir. 2016) ("It is well established in this Circuit that drug paraphernalia recovered from a trash pull establishes

probable cause to search a home when combined with other evidence of the resident's involvement in drug crimes."). Therefore, the search warrant affidavit at least met the "'minimally sufficient nexus between the illegal activity and the place to be searched' to avoid the bare-bones designation and thus be one upon which an officer can rely in good faith." *Christian*, 925 F.3d at 313 (quoting *United States v. Brown*, 828 F.3d 375, 385 (6th Cir. 2016)).

Gilbert's sole case, *United States v. McPhearson*, actually supports this conclusion. 469 F.3d 518, 526 (6th Cir. 2006). There, we held that a search warrant affidavit was bare bones because the only connection between the place to be searched and the alleged criminal activity was that the defendant had been arrested outside his home with crack cocaine in his pocket. *Id.* But we also distinguished similar cases where the good faith exception had applied, reasoning that those cases "depended on the fact that each of the defendants were known to have participated previously in the type of criminal activity that police were investigating." *Id.* (collecting cases). That distinction is what we have here: Yasenchack witnessed Gilbert briefly enter a vehicle and engage in a suspected drug transaction (resulting in the seizure of nearly half a pound of cocaine), found Gilbert with "a large quantity of cash" about two weeks later, and knew Gilbert had a history of trafficking in controlled substances. Combined with fresh evidence of suspected marijuana crumbs in Gilbert's trash, these facts created "the minimal nexus between the place to be searched and the evidence sought that would permit application of the good-faith exception." *Id.*

A few additional examples drive home why Yasenchack's affidavit was not bare bones, and why the good-faith exception applies. The prototypical examples of *Leon*'s bare bones affidavit come from *Nathanson v. United States*, 290 U.S. 41, 54 (1933), and *Aguilar v. Texas*, 378 U.S. 108 (1964). *See Leon*, 468 U.S. at 915. In *Nathanson*, the affiant stated under oath that "he has cause to suspect and does believe that" liquor illegally brought into the United States "is now deposited and contained within the premises" belonging to the defendant. 290 U.S. at 44. In *Aguilar*, the affiants stated "in relevant part" that they "received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and

use contrary to the provisions of the law." 378 U.S. at 109. And in more contemporary times, we have held that a search warrant affidavit was bare bones when:

- "[s]ave for a passing reference to [defendant's] car registration, the affidavit [wa]s devoid of facts connecting the residence to the alleged drug dealing activity," *Brown*, 828 F.3d at 385;

- "the only connection" between the places to be searched and the alleged crime (murder), was "hearsay information that [the defendant] was the last person to be seen with [the victim]," *United States v. West*, 520 F.3d 604, 611 (6th Cir. 2008); or

- the affidavit recounted only one controlled buy of narcotics on an unknown date. *United States v. Hython*, 443 F.3d 480, 486, 488–89 (6th Cir. 2006).

But as set forth above, Yasenchack's affidavit is far afield from these affidavits of precedent past. It tied the alleged drug activity to Gilbert's residence (unlike *Brown*), was based upon multiple events, (unlike *McPhearson* or *Hython*), and relied on verifiable facts, not conclusory assertions, unsubstantiated hearsay, or a purely subjective belief that Gilbert was involved in drug trafficking (unlike *Nathanson*, *Aguilar*, and *West*). Thus, while the factual nucleus arguably fell short of probable cause, the affidavit was not "*so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *White*, 874 F.3d at 497. That puts this case outside the realm of bare-bones affidavits and into the heartland of the good-faith exception. *See Christian*, 925 F.3d at 313–14. Any conclusion to the contrary "would unduly exalt the Fourth Amendment interest marginally served by deterring nonculpable conduct over the public interest in combatting crime—and would amount to effective disregard of Supreme Court precedent as well as our own." *Id.*

III.

For these reasons, we affirm the judgment of the district court.