NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0555n.06

No. 19-4158

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 29, 2020
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA          )
                                  )
        Plaintiff-Appellee,       )
                                  )
                                  )   ON APPEAL FROM THE
        v.                        )   UNITED STATES DISTRICT
                                  )   COURT FOR THE NORTHERN
TORIONO BURTON                    )   DISTRICT OF OHIO
                                  )
        Defendant-Appellant.      )

BEFORE: McKEAGUE, GRIFFIN, and BUSH, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Toriono Burton entered a conditional guilty plea to being a felon in possession of a firearm and ammunition after the district court partially denied his motion to suppress. On appeal, he argues that the district court should have suppressed physical evidence found because of statements taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and that his trial attorney provided constitutionally ineffective assistance at his suppression hearing. For the reasons below, we affirm the district court's decision on Burton's suppression motion, decline to address his ineffective-assistance claim, and rebuke defense counsel for disparaging the district court in his appellate brief.

I.

This case stems from a traffic stop initiated by Cleveland Police Detective Jeffrey Yasenchack while surveilling a neighborhood that was reported to be a "hot spot" for drug-dealing.

Yasenchack observed Burton park his truck near a row of houses. A few minutes later, a man walked out of one of these houses and towards the truck. Yasenchack saw a "rectangular lump" in the man's front pocket. The man entered the front passenger seat of the truck, turned toward Burton, and appeared to conduct a transaction. The man then quickly exited (now without the "lump"), and Burton drove away.

Suspecting a drug transaction, Yasenchack followed the truck. He saw the truck change lanes without signaling and initiated a traffic stop. As soon as the truck pulled over, Yasenchack observed Burton's head and shoulders "dipping down," as if he was trying to hide or reach for something. This movement worried Yasenchack, so he radioed for back-up.

Yasenchack approached the truck and advised Burton of his traffic violation. While Burton was talking with Yasenchack, he was "beyond th[e] normal nervousness" that Yasenchack typically sees during traffic stops. After Yasenchack returned to his car to verify Burton's information, a back-up officer arrived. Yasenchack informed the officer of his suspicion that Burton had conducted a drug transaction and expressed a desire to get Burton out of the truck, away from any weapons or drugs that might be inside.

The officers approached the truck, and Yasenchack asked Burton to step outside, ostensibly to sign a traffic citation. The officers then led Burton to the back of the truck and handcuffed him. Yasenchack believed that handcuffs were necessary given his suspicion of drug-dealing and the way in which Burton had dipped down at the beginning of the stop.

Yasenchack then asked if Burton had anything on him or in his truck that the officers should be worried about. Burton gestured to his waist and responded, "I have a weapon." Yasenchack searched Burton's pockets and found a loaded handgun and seven rounds of ammunition. Burton

admitted that, as a felon, he was prohibited from possessing a gun or ammunition. At this point, Yasenchack formally arrested Burton and (for the first time) read him his *Miranda* rights.

A federal grand jury indicted Burton on one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Burton moved to suppress all evidence derived from the search of his car and person, and all statements he made to Yasenchack. Following an evidentiary hearing, the district court partially granted and partially denied Burton's motion to suppress. *United States v. Burton*, 2019 WL 3252963 (N.D. Ohio July 19, 2019). As relevant here, it suppressed his unwarned "I have a weapon" statement. *Id.* at *6. But, relying on *United States v. Patane*, 542 U.S. 630, 637, 641–42 (2004), the district court refused to suppress the physical evidence found as a direct result of this statement—the gun and ammunition—because the statement was voluntary. *Burton*, 2019 WL 3252963, at *6–7.

Having largely lost his motion to suppress, Burton entered into a conditional guilty-plea agreement. Under this agreement, he pleaded guilty to his felon-in-possession charge but maintained his right to appeal the district court's decision on his suppression motion. Burton filed a timely notice of appeal.

II.

The primary issue on appeal is whether the district court should have suppressed the gun and ammunition as "fruit of the poisonous tree" because they were found as a result of Burton's un-*Mirandized* statement. "When reviewing a district court's ruling on a motion to suppress, we will reverse findings of fact only if they are clearly erroneous." *United States v. Gilbert*, 952 F.3d 759, 762 (6th Cir. 2020) (citation omitted). "When the district court has denied the motion to suppress, we review all evidence in a light most favorable to the Government." *Id.* On de novo review of the district court's legal conclusions, *United States v. Evans*, 581 F.3d 333, 340 (6th Cir.

2009), we conclude that the district court did not err in refusing to suppress the gun and ammunition.

The Fifth Amendment's Self-Incrimination Clause provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. "[T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." *Patane*, 542 U.S. at 637 (plurality op.) (citing *Chavez v. Martinez*, 538 U.S. 760, 764–68, 777–79 (2003)). The Supreme Court has also interpreted this clause to provide a "privilege against self-incrimination during custodial interrogation." *Miranda*, 384 U.S. at 490. To guard against violations of the Self-Incrimination Clause, police officers are required to advise a suspect of their "*Miranda* rights" before engaging in custodial interrogation. *United States v. Levenderis*, 806 F.3d 390, 400 (6th Cir. 2015). If the officer fails to inform a suspect of their *Miranda* rights, their unwarned statements may not be admitted at trial. *Miranda*, 384 U.S. at 492.

Although statements made in violation of *Miranda* must be suppressed, physical evidence found because of voluntary, un-*Mirandized* statements may be admitted. *Patane*, 542 U.S. at 634 (plurality op.) ("[T]he *Miranda* rule protects against violations of the Self-Incrimination Clause, which, in turn, is not implicated by the introduction at trial of physical evidence resulting from voluntary statements . . . ."); *id*. at 645 ("Admission of nontestimonial physical fruits . . . does not run the risk of admitting into trial an accused's coerced incriminating statements against himself.") (Kennedy J., concurring in the judgment). Admitting physical evidence obtained because of a *Miranda* violation does not implicate a defendant's right against self-incrimination because "[t]he Fifth Amendment, of course, is not concerned with nontestimonial evidence." *Oregon v. Elstad*, 470 U.S. 298, 304 (1985). And while the "fruit of the poisonous tree" doctrine extends the Fourth

Amendment's exclusionary rule to cover "not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality," *United States v. Figueredo-Diaz*, 718 F.3d 568, 574 (6th Cir. 2013) (citation omitted), the Supreme Court has long declined to extend this doctrine to require the suppression of evidence solely because it was derived from a *Miranda* violation. *Patane*, 542 U.S. at 637, 642; *Michigan v. Tucker*, 417 U.S. 433, 445 (1974); *Harris v. New York*, 401 U.S. 222, 225 (1971).

In sum, a failure to provide a *Miranda* warning, standing alone, cannot justify the exclusion of physical evidence found because of the unwarned statements. *Patane*, 542 U.S. at 639. Typically, "the exclusion of unwarned statements is a complete and sufficient remedy for any perceived *Miranda* violation." *Id*. at 641–42 (quotation marks, brackets, and ellipses omitted). But unwarned statements must still have been voluntarily made. *Id*. at 636 ("The Self-Incrimination Clause . . . is not implicated by the admission into evidence of the physical fruit of a *voluntary* statement.") (emphasis added). If the statements were "actually coerced," then their physical fruits must also be excluded. *Id*. at 644. Thus, whether to admit physical evidence found because of an un-*Mirandized* statement is ultimately a question of voluntariness.

The district court reviewed Yasenchack's body-cam footage, heard his testimony, and concluded that, "even absent *Miranda* warnings, [Burton]'s statements were voluntary." *Burton*, 2019 WL 3252963, at *7. It reasoned:

> That [Burton] was handcuffed does not render his statements involuntary. [Burton] was questioned on a public street. Detective Yasenchack did not draw his weapon, did not threaten [Burton], did not raise his voice, and spoke in a conversational tone. The conversation lasted for less than a minute before [Burton] admitted to possessing a firearm. Neither of the officers present engaged in any coercive activity.

*Id.* (internal citations omitted).

Burton does not challenge this finding on appeal. Instead, he categorically claims (without discussing *Patane* or its progeny) that *Miranda* requires suppression of the physical evidence in this situation. But as *Patane* makes clear, physical evidence obtained as a result of an un-*Mirandized* statement need not be suppressed if that statement was voluntary. *Patane*, 542 U.S. at 636, 645. Because Burton has not challenged the district court's voluntariness determination, and because we find no error in that conclusion, we affirm the district court's denial of Burton's motion to suppress the gun and ammunition.

III.

Burton preserved one more issue for appeal—that his trial counsel provided constitutionally ineffective assistance at his suppression hearing by failing to raise the "fruit of the poisonous tree" argument and by failing to better impeach Yasenchack's testimony.[1] Usually, we defer deciding ineffective-assistance claims on direct appeal to allow the parties to better develop the record in collateral proceedings. *See*, *e.g*., *Levenderis*, 806 F.3d at 401–02. Because Burton provides no reason why we should deviate from our general practice, we decline to address this claim. *See United States v. Franco*, 484 F.3d 347, 355 (6th Cir. 2007) (relying on "the general rule against ineffective assistance of counsel claims on direct appeal" to "abstain from ruling on th[e] issue").

IV.

Finally, we hereby rebuke defense counsel, James R. Willis, for disparaging the district court in his appellate brief. For instance, in his words, it was "nonsense", "indefensible," and "outlandish," for the district court to correctly conclude that a *Miranda* violation, by itself, does

---

[1]To the extent that Burton attempts to raise any other issues on appeal, he has forfeited our consideration of those issues because he did not include them in his statement of issues. *United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016).

not mandate suppression of physical evidence. Moreover, he inappropriately attacked the district court's decision to credit Yasenchack's testimony by stating that "the degree of gullibility required to believe [Yasenchack] was telling the truth can be likened to believing in the tooth fairy," and that anyone who, like the district court, believes Yasenchack's testimony, "should be probated."

When drafting briefs, attorneys must refrain from making disparaging remarks. The reasons why "include civility; the near-certainty that overstatement will only push the reader away; and that, even where the record supports an extreme modifier, the better practice is usually to lay out the facts and let the court reach its own conclusions." *Bearden v. Ballard Health*, 967 F.3d 513, 515 (6th Cir. 2020) (alterations and citations omitted). Additionally, derisive statements, like Mr. Willis's here, are often plainly incorrect as a matter of law (as we discuss above). *See Bennett v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 584, 585 (6th Cir. 2013).

Our research suggests that this is not the first time Mr. Willis has disparaged his fellow participants in the judicial process. We have, for example, "note[d] our concern" with his briefing in a prior case wherein he inappropriately criticized an Assistant United States Attorney. *United States v. Finney*, 740 F. App'x 497, 498 n.1 (6th Cir. 2018) (per curiam). According to Mr. Willis, the Assistant United States Attorney was on a "quest for . . . more than the pound of flesh she was awarded," and was "literally spewing . . . asserverated [sic], false declarations" and injecting "venom" into the proceedings. Appellant's Opening Br., *United States v. Finney*, No. 18-3379, 2018 WL 3426107, at *3, *3 n.1 (6th Cir. July 13, 2018).

Also relevant is *Enyart v. Coleman*. There the district court noted that Mr. Willis's brief was "laced with insults and disparaging comments directed at the Ohio courts, the Magistrate Judge, and opposing counsel." 29 F. Supp. 3d 1059, 1068–69 (N.D. Ohio 2014) (footnotes omitted). Those comments included "call[ing] the Ohio courts' handling of his claims 'mumble-

jumble,' 'inconsistent with reality,' 'pathetic,' and 'nonsensical,'" as well as levying "unfounded" "frivolous and disingenuous arguments" against opposing counsel. *Id.* at 1069 nn.2 & 4. And there, as here, the judicial officer received "the brunt of the assault." *Id.* at 1069 n.3. He called the Magistrate Judge's report and recommendation "a 'spectacle,' 'preposterous,' 'nonsense,' 'as good an example of legal dissonance as can be created and offered in support of what is pure nonsense,' 'totally flawed and totally indefensible,' 'a huge spectacle,' and 'concocted.'" *Id.* The court in *Enyart* concluded that Mr. Willis's abusive language "stray[ed] beyond the bounds of zealous advocacy," and was "unworthy of any member of the bar of this Court who values his reputation and good standing." *Id.* at 1069.

We echo these sentiments. Members of the bar are expected to treat all participants in the judicial process with courtesy and respect. *See also* 6th Cir. R. 46. Mr. Willis's efforts to attack the district court's (well-supported) factual and legal conclusions with disparaging comments have no place before this or any other court and will not be tolerated. "Careful research and cogent reasoning, not aspersions, are the proper tools of our trade." *Bearden*, 967 F.3d at 519 (citation omitted). We expect Mr. Willis to take this admonishment seriously, otherwise sanctions will be imposed.

V.

For these reasons, we affirm the judgment of the district court.