FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 2, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

MICHAEL BRANDON WILLIAMS,

    Defendant - Appellee.

No. 25-5011
(D.C. No. 4:24-CR-00336-JDR-1)
(N.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

A federal grand jury indicted Michael Williams on one count of impersonating an FBI agent and one count of being a felon in possession of a firearm and ammunition. The district court granted his motion to suppress evidence seized from his home. The Government appealed.

Exercising interlocutory jurisdiction under 18 U.S.C. § 3731, we reverse the court's determination that the good-faith exception to the exclusionary rule does not apply.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

### A.  *Factual History*[1]

### 1.  Pickup Line Incident

On September 26, 2024, Mr. Williams and other parents were waiting in their cars to pick up their children from Bixby East Elementary and Intermediate School in Broken Arrow, Oklahoma.  *See United States v. Williams*, No. 24-CR-336, 2024 WL 5246010, at *1 (N.D. Okla. Dec. 30, 2024).  Mr. Williams exited his Jeep Wrangler, approached another parent's car, and flashed a badge that said "FBI."  App. at 57-58.  According to a witness, the parent was "parked in the pickup line and wasn't pulling forward."  App. at 58.  The parent called the Bixby Police Department.  When officers arrived, she identified Mr. Williams as the man with the badge.

Officers told Mr. Williams to step out of his Jeep.  He complied but refused to identify himself.  Officers arrested him for obstruction.  They conducted an inventory search of his Jeep before having it towed.  During the search, they found two fake FBI badges, a pair of handcuffs, an emergency light bar, a CB radio, and a public address system.  *Williams*, 2024 WL 5246010, at *1.[2]  They seized only the badges, which "appear[ed] to be commercially produced and not homemade."  App. at 57.

---

[1] We draw the facts from the district court's order and the search warrant affidavit.

[2] The district court listed these items as "a dash camera, [and] light bar," *Williams*, 2024 WL 5246010, at *1, while the affidavit stated a Bixby police officer "noticed what he believed to be an emergency light bar on the dashboard, a CB radio, and a PA system," *id.* at 57.  This slight factual difference does not affect our disposition.

2. **Investigation**

After the arrest, Tulsa Police Officer Robert Heidlage confirmed that Mr. Williams was not an FBI agent or employee and found that he had two prior felony convictions—robbery in 2003 and felon in possession of a firearm in 2009.

On October 1, 2024, agents surveilled Mr. Williams's home and identified his Jeep parked in the driveway along with other vehicles.

Officer Heidlage prepared an affidavit on behalf of an FBI task force for a warrant to search Mr. Williams's home and vehicles on the curtilage. The affidavit stated the requested search concerned violations of "18 U.S.C. § 912 (False Impersonation of a Federal Officer or Employee)." App. at 56. The search warrant application said the "basis for the search" was to find "evidence of a crime"; "contraband, fruits of crime, or other items illegally possessed"; and/or "property designed for use, intended for use, or used in committing a crime." *Id.* at 53.

The first three pages of the affidavit contained general information about Officer Heidlage's qualifications and experience with drug and gang investigations. The next four pages described the pickup line incident and Officer Heidlage's investigation. The final eleven pages described Officer Heidlage's "training, experience, and knowledge" of "computer-related crimes," and provided generic information about searching and seizing computer systems and information stored on them. *Id.* at 59-70. Officer Heidlage concluded "there is probable cause to believe that violations of Title 18 U.S.C. § 912 (False Impersonation of a Federal Officer or Employee) have

3

occurred, and evidence, instrumentalities, and/or contraband of these offenses" are located in Mr. Williams's home and vehicles on the curtilage. *Id.* at 70, 72.

The affidavit included Attachments A and B. Attachment A identified the "property to be searched" including Mr. Williams's home address, a description of the residence, and a photograph, which showed his Jeep parked in the driveway. *Id.* at 72. Attachment B listed the items to be seized in subsections.

Subsection A of Attachment B listed "[a]ny law enforcement equipment or insignia, to include but not limited to":

| | |
|---|---|
| i. | Items or clothing labeled "Police", "FBI", "DEA", "Special Agent", "Sheriff", "Law Enforcement", |
| ii. | Any type of law enforcement identification or identifying items/clothing, |
| iii. | Any emergency equipment installed or to be installed on a vehicle such as red and blue flashing lights, |
| iv. | Police radio, |
| v. | Law enforcement type duty belt, |
| vi. | Firearms, |
| vii. | Handcuffs, |
| viii. | Body armor[.] |

*Id.* at 73.

Subsection B listed Mr. Williams's electronic devices to be seized, as well as records of internet usage, email addresses and messages, chat room logs, DVDs, physical keys, passwords, files, financial records, hacking software, routers, and modems.

Subsections C through F listed additional electronic devices and information to be seized, including credit card information, house ownership records, adapters, and chargers.

4

On October 4, 2024, a magistrate judge signed the search warrant for Mr. Williams's home and vehicles on the curtilage.

On October 16, 2024, officers executed the search warrant. From Mr. Williams's home, they seized multiple firearms, ammunition, four tactical vests, a body camera, and a laptop. From his Jeep, they seized handcuffs, a dash camera, and a red and blue light bar.

## B. *Procedural History*

Mr. Williams was indicted on one count of falsely impersonating a federal officer, in violation of 18 U.S.C. § 912, and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

### 1. **Motion to Suppress**

Mr. Williams moved to suppress the evidence seized from his home. He argued the affidavit lacked probable cause to connect the alleged criminal activity—false impersonation of a federal officer or employee—and the place to be searched—his home. He also argued the good-faith exception to the exclusionary rule did not apply.

The Government responded that (1) the FBI badges may have been purchased online, making it reasonable to seek Mr. Williams's electronic devices, (2) it would be "unreasonable to conclude that the illegal items located on [Mr.] Williams during a chance encounter with law enforcement would constitute the totality of all such items in his possession," App. at 104-05, and (3) the search of Mr. Williams's home "did, in fact, reveal evidence of the impersonation of law enforcement," *id.* at 105. The Government

5

also argued the good-faith exception applied because the warrant was not devoid of factual support linking Mr. Williams's suspected criminal activity to his home.

After a hearing, the district court granted Mr. Williams's motion to suppress. *Williams*, 2024 WL 5246010, at \*1-4. It found the affidavit did not establish the required nexus to the home and was so lacking in indicia of probable cause that the good-faith exception did not apply. *Id.*

The Government filed a timely interlocutory appeal.

## II.  **DISCUSSION**

The Government challenges the district court's rulings on probable cause and the good-faith exception. We review only the latter. *See United States v. Cotto*, 995 F.3d 786, 797 (10th Cir. 2021) ("[W]e bypass [the probable cause inquiry] and conclude the good-faith exception applies." (alterations in original) (quoting *United States v. Campbell*, 603 F.3d 1218, 1231 (10th Cir. 2010))).[3] We "review de novo the applicability of exceptions to the exclusionary rule, such as the good-faith exception." *Id.* at 795; *United States v. Rowland*, 145 F.3d 1194, 1206 (10th Cir. 1998).

---

[3] On appeal, the Government argues that, because Mr. Williams "had ample 'opportunity for concealment,' i.e., for moving the other evidence of his impersonation out of the Jeep and into his home," the magistrate judge correctly concluded Officer Heidlage's affidavit established a sufficient nexus for probable cause. Aplt. Br. at 18. Mr. Williams argues the Government waived this argument by failing to argue it in district court and failing to argue plain error in its opening brief. Aplee. Br. at 20-23. We agree. *See United States v. Leffler*, 942 F.3d 1192, 1197-1200 (10th Cir. 2019).

A. *Legal Background*

1. **Fourth Amendment and Probable Cause**

The Fourth Amendment generally requires a warrant issued upon probable cause for officers to search a person's home. *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978). "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Mora*, 989 F.3d 794, 800 (10th Cir. 2021) (quotations omitted). "Probable cause undoubtedly requires a nexus between [the contraband to be seized or] suspected criminal activity and the place to be searched." *Rowland*, 145 F.3d at 1203 (alteration in original) (quoting *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990)); *see also United States v. Biglow*, 562 F.3d 1272, 1278 (10th Cir. 2009). "Whether a nexus exists to search a suspect's home depends on the strength of the case-specific evidence that links suspected criminal activity and the home." *Mora*, 989 F.3d at 800.

2. **Exclusionary Rule**

"Ordinarily, courts will remedy a Fourth Amendment violation by invoking the exclusionary rule to exclude the Government's introduction of the unlawfully seized evidence as direct evidence against the defendant in a criminal prosecution." *United States v. Herrera*, 444 F.3d 1238, 1248 (10th Cir. 2006). The rule's purpose is to serve as "a disincentive for law enforcement to engage in unconstitutional activity." *United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018); *see Davis v. United States*, 564 U.S. 229, 236-37 (2011) ("The rule's sole purpose . . . is to deter future Fourth

7

Amendment violations."). "Whether the exclusionary rule applies in a given case 'turns on whether such application will be an effective deterrent against future Fourth Amendment violations.'" *Cotto*, 995 F.3d at 795 (quoting *Knox*, 883 F.3d at 1273). The "rule is subject to several well-known exceptions when this purpose is not met." *Id.* The Supreme Court recognized the good-faith exception in *United States v. Leon*, 468 U.S. 897 (1984).

### 3.  The *Leon* Good-Faith Exception

In *Leon*, the Supreme Court considered whether "the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." 468 U.S. at 900. It concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Id.* at 922.

Thus, "[u]nder the good-faith exception to the exclusionary rule, if a warrant is not supported by probable cause, the evidence seized pursuant to the warrant need not be suppressed if the executing officer acted with an objective good-faith belief . . . ." *United States v. Edwards*, 813 F.3d 953, 970 (10th Cir. 2015) (quotations omitted); *see Leon*, 468 U.S. at 922. We consider the objective reasonableness "not only of the officers who eventually executed a warrant, but also of the officers who originally

obtained it or who provided information material to the probable-cause determination."
*Leon*, 468 U.S. at 923 n.24.

Reliance upon a warrant issued by a neutral magistrate creates a "presumption . . . [that] the officer is acting in good faith." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985) (citing *Leon*, 468 U.S. at 925-26). The threshold to overcome this presumption is a "high one" because "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (alteration in original) (quoting *Leon*, 468 U.S. at 921); *see Knox*, 883 F.3d at 1274.

An "officer's reliance on the defective warrant still must be objectively reasonable." *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017). "An affidavit has enough factual support to justify reliance if it establishes a minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Henderson*, 595 F.3d 1198, 1202 (10th Cir. 2010) (alterations adopted and quotations omitted). The "minimal nexus requirement does not require that hard evidence or personal knowledge of illegal activity link a Defendant's suspected unlawful activity to his home." *Campbell*, 603 F.3d at 1231 (quotations omitted).

Reliance is objectively unreasonable when the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quotations omitted). Thus, "[a]n officer can't rely in good faith on an affidavit that is 'bare bones' or 'devoid' of factual support," *United States v. Cordova*, 792 F.3d 1220, 1223 (10th Cir. 2015) (quoting *Corral-Corral*,

9

899 F.2d at 934)—when it "merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge," *United States v. Roach*, 582 F.3d 1192, 1204-05 (10th Cir. 2009) (quotations omitted).[4]

## B. *Analysis*

As explained below, the officers' reliance on the search warrant was not "entirely unreasonable," *Leon*, 468 U.S. at 923 (quotations omitted), and the good-faith exception to the exclusionary rule applies.

### 1. Presumption of Good Faith

Based on the following, the officers were entitled to a presumption of good faith. *See Cardall*, 773 F.2d at 1133. Officer Heidlage followed the required procedural steps when applying for the warrant, which "indicates he was acting in good faith." *Cotto*, 995 F.3d at 797. The magistrate judge approved the application and affixed to the warrant the affidavit's Attachments A and B, which identified the property to be searched and particular items to be seized. There is no suggestion the officers executing the warrant

---

[4] In *Leon*, the Supreme Court cited *Nathanson v. United States*, 290 U.S. 41 (1933) and *Aguilar v. Texas*, 378 U.S. 108 (1964), *abrogated by Illinois v. Gates*, 462 U.S. 213 (1983), as examples of cases with "bare bones" affidavits. 468 U.S. at 915. In *Nathanson*, the affiant stated "he has cause to suspect and does believe" that liquor illegally brought into the United States "is now deposited and contained within the premises" belonging to the defendant. 290 U.S. at 44. In *Aguilar*, the affiants stated that they "received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law." 378 U.S. at 109. In these cases, the affiants' "mere affirmation of suspicion and belief without any statement of adequate supporting facts" were insufficient. *Id.* at 112, 114 (quoting *Nathanson*, 290 U.S. at 46).

exceeded its limits. "At each step of the investigation, the officers made every effort to comply with the law," suggesting good-faith reliance on what the officers reasonably believed to be a valid search warrant. *United States v. Burgess*, 576 F.3d 1078, 1096 (10th Cir. 2009); *see also Russian*, 848 F.3d at 1247.

In addressing whether the good-faith presumption holds, we ask "not whether the Magistrate erred in believing there was sufficient probable cause to support the scope of the warrant . . . [but] instead whether the Magistrate so obviously erred that any reasonable officer would have recognized the error." *Messerschmidt*, 565 U.S. at 556. The focus here is on nexus to the home. Even if Officer Heidlage's affidavit lacked the requisite nexus between Mr. Williams's suspected criminal activity and his home for probable cause, it still provided a minimal connection justifying good-faith reliance on it. *See Cotto*, 995 F.3d at 797.

2.  ***Gonzales* and *Cotto***

The parties argue that two cases should guide our analysis. Mr. Williams contends that Officer Heidlage's affidavit is like the one in *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005). We found the officer's reliance on it could not be objectively reasonable. *Id.* at 1231. The Government argues the affidavit is more like the one in *Cotto*, where we found good-faith reliance on the search warrant. 995 F.3d at 797. We agree with the Government.

In *Gonzales*, police found ammunition in the defendant's car after he crashed it while drinking and driving. 399 F.3d at 1227. Because Mr. Gonzales was a convicted felon, the police decided to seek a warrant to search his home. *See id.* at 1227-28. The

11

affidavit sought to search "321 E. Church" for firearms and ammunition. *Id.* But it said only that, in the affiant detective's opinion based on two years of law-enforcement experience, "firearm[s] are often kept at the residence as well as in vehicles." *Id.* at 1228. It contained "no facts explaining how the address was linked to Mr. Gonzales, the vehicle, or the suspected criminal activity." *Id.* at 1230. Thus, in contrast to the affidavit here showing the home to be searched was Mr. Williams's residence and his vehicle was parked at the residence, the *Gonzales* affidavit contained no facts "establishing the residence belonged to or was otherwise linked to Mr. Gonzales." *Id.* at 1231. We held the *Gonzales* affidavit thus did not provide the minimal nexus between the place to be searched and the suspected criminal activity. *Id.* Because "this connection [wa]s wholly absent," reliance was not objectively reasonable, and evidence seized from the home was excluded. *Id.*

In *Cotto*, law enforcement suspected the defendant of engaging in a road rage incident and shooting before driving off in a red Camaro. 995 F.3d at 792-93. They sought a search warrant for a house where the defendant was seen entering and exiting and where a red Camaro was parked outside. *Id.* The affidavit stated that (1) video showed the red Camaro fleeing the scene of a shooting, (2) it was later parked outside the residence, and (3) police arrested the defendant there. *Id.* at 797. We said the detective executing the warrant could reasonably believe the defendant was storing evidence of his criminal activity at the residence—"several hours had passed since the road rage incident, Cotto used a gun during the incident, and the car he fled the scene in was parked outside

12

the residence." *Id.* "The facts contained in the affidavit could have supported an officer's objectively reasonable good-faith reliance on the warrant." *Id.*

Officer Heidlage's affidavit, like the *Cotto* affidavit, "contained statements that [Mr. Williams's Jeep] was found outside the house to be searched." *Id.* at 798. And beyond the *Cotto* affidavit, it said Mr. Williams lived at the home, that local police had seen items related to the alleged crime in Mr. Williams's Jeep five days earlier, and that the fake FBI badges "appear[ed] to be commercially produced." App. at 56-57, 59.[5] It further suggested the home may contain law enforcement insignia clothing and computer evidence on Mr. Williams's purchase of the FBI badges and other impersonation items. Unlike the *Gonzales* affidavit, the affidavit here provided "*some* factual basis connecting the place to be searched" to the defendant's "suspected criminal activity." 399 F.3d at 1231.

### 3. Minimal Nexus

Although Officer Heidlage's affidavit may not have established the substantial nexus required for probable cause, it provided a minimal nexus connecting

---

[5] *United States v. Jimenez*, 205 F. App'x 656 (10th Cir. 2006) (unpublished) is instructive. In *Jimenez*, eyewitnesses to a shooting identified the shooter as a "'Spanish' male driving a dark-colored Dodge Neon" with a female passenger. *Id.* at 658. A sketch of the shooter led officers to Mr. Jimenez. *Id.* His girlfriend, Ms. Flores, resided at 334 E. Bonney. *Id.* During surveillance of the address, an officer saw a black Neon registered to Ms. Flores parked outside. *Id.* We held the good-faith exception applied because the affidavit for a warrant to search the home said Mr. Jimenez was romantically involved with Ms. Flores, Ms. Flores owned a black Neon consistent with eyewitnesses' descriptions of the car used by the shooter, and the car was parked in front of her house in the days following the shooting. *Id.* at 661. We note this case for its persuasive value. *See* Fed. R. App. 32.1(a); 10th Cir. R. 32.1(A).

Mr. Williams's home to his suspected criminal activity. *See Roach,* 582 F.3d at 1203-04 (concluding an affidavit did not establish probable cause to search a home but applying the good-faith exception because the affidavit established a minimal nexus); *see also United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020) ("There must be daylight between the 'bare bones' and 'substantial basis' standards if *Leon*'s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function." (quoting *Leon*, 468 U.S. at 906-07, 913-21)).[6]

Based on law enforcement's finding items in Mr. Williams's Jeep related to the suspected criminal activity and then observing the Jeep outside Mr. Williams's home, it was not "entirely unreasonable . . . for officers executing the warrant to rely on the magistrate's authorization of it." *Roach*, 582 F.3d at 1204; *see Leon*, 468 U.S. at 923; *Cotto*, 995 F.3d at 798 ("[W]e cannot say the affidavit was *so devoid* of factual support as to render the executing officer's reliance on the subsequent warrant approved by a judge objectively unreasonable."); *Edwards*, 813 F.3d at 972 ("Although the link between

---

[6] The Sixth Circuit has extensively addressed the good-faith exception. *See, e.g., United States v. Lewis*, 81 F.4th 640, 648 (6th Cir. 2023) ("Although Detective Gatson's affidavit fell well short of establishing probable cause, an affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding." (alterations adopted and quotations omitted)); *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) ("If the reviewing court is able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched, then the affidavit is not bare bones and official reliance on it is reasonable." (quotations omitted)). We resolve this case based on Supreme Court and Tenth Circuit precedent.

Mr. Edwards's [suspected criminal activity] and the [evidence sought in his home] was logically fallacious, it is not so obviously unsound that it rendered reliance on the warrant objectively unreasonable.").

In sum, the affidavit was not bare bones or devoid of factual support. Its facts supported a minimally sufficient nexus between Mr. Williams's suspected criminal activity and his home. It was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quotations omitted); *see also Knox*, 883 F.3d at 1274 ("Our inquiry is . . . whether the affidavit is so facially deficient that reliance on a warrant issued in response to that affidavit cannot have been in good faith"). The good-faith exception applies.

### 4. **Notice from Case Law**

One more step in the analysis bolsters this conclusion. "Even if an affidavit is not devoid of factual support, an officer cannot hide behind the good faith exception if [he] 'knows or should have known that a search warrant was invalid.'" *Henderson*, 595 F.3d at 1202 (quoting *United States v. McKneely*, 6 F.3d 1447, 1455 (10th Cir. 1993)). "Law enforcement officials are presumed to have a reasonable knowledge of the law." *Id.* "As a result, prior court decisions resting on functionally identical facts can put law enforcement on notice that an affidavit is insufficient to establish probable cause." *Id.*

This consideration does not rule out the good-faith exception here—just the opposite. This court has not answered whether a suspect's parked car outside a home, without more, is sufficient to support probable cause to search the home. *See Cotto*, 995 F.3d at 797. So our case law would not show "law enforcement was on notice that

15

the [circumstances were] . . . insufficient to establish probable cause." *Henderson*, 595 F.3d at 1202; *see also Roach*, 582 F.3d at 1204 ("[A]n officer with reasonable knowledge of the law might have concluded, until today, that Roach's decade-long involvement in gang-related crimes logically meant that he would continue to be involved in such crimes and to retain evidence of them at his residence."); *Rowland*, 145 F.3d at 1207 (applying the good-faith exception to an anticipatory warrant when the law was unsettled).

### III.  **CONCLUSION**

We reverse and remand.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

16