FILED
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**September 2, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ZACHARY JACOB BLASDEL,

    Defendant - Appellant.

No. 24-5071

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:23-CR-00183-JDR-1)**
_____

Richelle Anderson (Ryan J. Villa, with her on the briefs), The Law Office of Ryan J. Villa, Albuquerque, New Mexico, for Defendant-Appellant.

John W. Dowdell, Assistant United States Attorney (Clinton J. Johnson, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.
_____

Before **BACHARACH**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.
_____

**SEYMOUR**, Circuit Judge.
_____

Defendant Zachary Jacob Blasdel appeals his conviction and sentence in this Fourth Amendment case. Police officers entered Mr. Blasdel's storage unit and conducted a warrantless search. They later used what they discovered in an affidavit in support of their successful request for a search warrant. When the officers

executed the warrant, they found drugs and firearms. Based on the results of the storage unit search, officers obtained a search warrant for Mr. Blasdel's house, where they found additional drugs and firearms. Mr. Blasdel filed a motion to suppress the evidence from both searches on Fourth Amendment grounds. The district court denied the motion. Mr. Blasdel entered a conditional guilty plea to the charges of drug conspiracy, possession of methamphetamine with intent to distribute, and felon in possession of a firearm. He was sentenced to 188 months imprisonment. Mr. Blasdel expressly reserved his right to appeal the district court's denial of his motion to suppress. He argues that once the constitutionally invalid portions of the affidavit in support of the storage unit search warrant are excised, the affidavit fails to establish probable cause for the warrant to be issued. As a result, Mr. Blasdel argues, the subsequent warrant to search his home was based on fruit of the poisonous tree.

For the reasons explicated *infra*, we agree with Mr. Blasdel that the evidence obtained from the searches of his storage unit and home should be suppressed. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we **reverse** the district court's denial of Mr. Blasdel's suppression motion, **vacate** Mr. Blasdel's conviction and sentence, and **remand** for further proceedings consistent with this opinion.

## I. Background[1]

In October 2022, K.D., an employee at Acorn Storage Center ("Acorn") in Bartlesville, Oklahoma, discovered that the door to storage unit 3992 ("Unit 3992")

---

[1] The Court limits it recounting of the facts to the issues relevant on appeal.

was slightly open. Acorn's rental agreement permitted employees to enter the storage unit at any time. Jessica Montgomery signed the rental agreement for Unit 3992, but Mr. Blasdel's email address was listed on the rental agreement for the unit and he paid for it. K.D. and D.D., another employee at Acorn, opened the door to Unit 3992 to confirm there were no people or animals in the unit and walked inside. K.D. saw a gun, white powder, baggies, and a money counter on what she described as a desk. D.D. saw a gun, a money counting machine, and a scale on what he described as a nightstand or dresser. He also saw baggies in open drawers. The employees exited Unit 3992 and called the police, which is Acorn's standard practice after discovering a firearm or ammunition in one of its storage units.

Officer Doyle arrived at Acorn first and D.D. told him that Unit 3992 was open and appeared to have guns and drug paraphernalia. K.D. brought Officer Doyle to the unit. Officer Doyle's body remained outside the boundaries of the unit, but he "peeked [his] head inside . . . just enough to see the four corners [of the storage unit]." Rec., vol. I at 91. Officer Doyle saw rocks that he believed were methamphetamine, a firearm, and a money counter on top of a desk. Officer Doyle later testified that he did not believe he could have seen the rocks without peeking his head into Unit 3992.

Officer Doyle then contacted his supervisor and an investigator, Officer Lemmons, who arrived at Acorn shortly afterward. Officer Lemmons peered inside Unit 3992 and saw a firearm, digital scales, a currency counter, backpacks, and baby formula. He then called the district attorney who, as Officer Lemmons later testified,

3

"wanted [him] to have eyes on [the suspected methamphetamine]." Rec., vol. I at 124. Officer Lemmons then went into Unit 3992 and opened a drawer to look inside. He exited Unit 3992 and drafted an affidavit in support of a search warrant for the storage unit.

In the search warrant, Officer Lemmons wrote "Affiant states I could clearly see a white crystalline substance on a desk inside [Unit 3992]. I recognized the substance to be Methamphetamine from my experience as a police officer." Rec., vol. I at 40. He also describes "baggies, scales, a firearm, and a digital currency counter." *Id.* A state court judge issued the search warrant, and the resulting search of Unit 3992 led to the discovery of approximately four pounds of methamphetamine and several guns.

Officer Lemmons then wrote a second affidavit, this time seeking a search warrant for Mr. Blasdel's house. In the warrant, Officer Lemmons explained that methamphetamine and guns were recovered from Unit 3992. He said that he believed there may be additional evidence at Mr. Blasdel's house, that Mr. Blasdel knew the police were at his storage unit, and that "there [was] a possibility evidence could be destroyed." Rec., vol. I at 46. A state court judge issued the search warrant, and the search of Mr. Blasdel's home led the police to discover more than 300 grams of methamphetamine and six additional guns.

Mr. Blasdel filed a motion to suppress the evidence found in Unit 3992 and at his house. He argued that the police officers violated his Fourth Amendment rights by entering and searching his storage unit before obtaining a search warrant.

4

According to Mr. Blasdel, the information obtained from the warrantless searches was included in the affidavit in support of the application for a search warrant for Unit 3992. Mr. Blasdel argued that because the results of the search of the storage unit were the basis of the application in support of a search warrant for his house, the evidence recovered from his house should be considered fruit of the poisonous tree. The government opposed the motion, and the district court held a hearing on the motion to suppress the evidence. At the hearing, the officers and Acorn employees testified about what had happened.

The district court issued a written order denying Mr. Blasdel's motion to suppress the evidence found in Unit 3992 and his house. It held that Mr. Blasdel's Fourth Amendment rights had not been violated by the police officers' warrantless search of his storage unit and that the search of his home was therefore not fruit of the poisonous tree.

Mr. Blasdel entered a conditional guilty plea, explicitly reserving his right to appeal the district court's denial of his motion to suppress. He pled guilty to drug conspiracy, possession of methamphetamine with intent to distribute, and felon in possession of a firearm. Mr. Blasdel was sentenced to 188 months imprisonment. This timely appeal followed.

## II. Analysis

When considering a district court's denial of a motion to suppress, we review "the district court's factual findings for clear error," *United States v. Muhtorov*, 20

F.4th 558, 592 (10th Cir. 2021), and review the district court's legal conclusions de novo. *United States v. Santiago*, 135 F.4th 1235, 1239 (10th Cir. 2025).

### A. Mr. Blasdel's Storage Unit

We turn first to the storage unit. As we have noted, although Ms. Montgomery is the one who signed the rental agreement for Unit 3992, Mr. Blasdel's email is listed on the document and he is the one who paid for the unit. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "[P]eople generally have a legitimate expectation of privacy in a storage unit." *United States v. Lowe*, 117 F.4th 1253, 1262 (10th Cir. 2024).

The parties agree that the Fourth Amendment applies to the police officers' actions but does not apply to the Acorn employees' actions. The briefing and hearing on Mr. Blasdel's motion to suppress was how the district court gathered facts about the police officers' actions. There is no disagreement about the fact that Officer Doyle peeked his head into Unit 3992 and that Officer Lemmons entered Unit 3992 and opened a drawer *before* obtaining a search warrant. Despite the government's arguments to the contrary, these were unreasonable searches that violated Mr. Blasdel's Fourth Amendment rights. *See United States v. Jones*, 565 U.S. 400, 407 (2012).

These violations of Mr. Blasdel's Fourth Amendment rights do not necessarily mean that the evidence obtained from the storage unit search warrant must be suppressed. "When a warrant is tainted by some unconstitutionally obtained information, we

6

nonetheless uphold the warrant if there was probable cause absent that information." *United States v. Bullcoming*, 22 F.4th 883, 890 (10th Cir. 2022) (quoting *United States v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005)). In other words, if the affidavit in support of the storage unit search warrant supplies sufficient probable cause after the unconstitutionally obtained information is excised, the evidence does not need to be suppressed.

Officer Lemmons wrote the affidavit in support of the application for a search warrant for Unit 3992. The affidavit includes a paragraph detailing his training and experience as a police officer with a focus on drug-detection K-9s. The next paragraph says "Affiant states he was contacted by a patrol officer that stated there was evidence of narcotic distribution/trafficking inside an Acorn storage unit." Rec., vol. I at 40. The patrol officer referenced is Officer Doyle. This sentence does not clarify how Officer Doyle came to believe that there was evidence of narcotic distribution or trafficking inside Unit 3992. It could be that this belief came from Officer Doyle's conversations with the Acorn employees. But it could also be that this belief came from Officer Doyle impermissibly peeking his head into the storage unit to look around before obtaining a search warrant. The affidavit does not say one way or the other.

In the next paragraph, the affidavit explains that Acorn employees saw Ms. Montgomery and Mr. Blasdel engaged in strange behavior and that an Acorn employee noticed that Unit 3992's door was open. Officer Lemmons then wrote "Affiant states that the employee believed the items seen in plain view of the open door to be illegal narcotics." *Id.* The affidavit does not specify who did the believing (beyond that they

7

were an employee), who did the seeing, what items the person saw, or why the person believed those items were illegal narcotics. It could be that the seeing was done by an employee, or it could be that the seeing was done by Officer Doyle or Officer Lemmons. There is no description in this paragraph of drug paraphernalia, let alone white rocks or crystalline substances. In short, there is no clear description of what Acorn employees told Officer Lemmons they saw in Unit 3992.

In the next paragraph of the affidavit, Officer Lemmons switches from ambiguous language to precise language. "Affiant states I could clearly see a white crystalline substance on a desk inside the unit. I recognized the substance to be Methamphetamine from my experience as a police officer. Near the drugs were, baggies, scales, a firearm, and a digital currency counter. These items are commonly used in the distribution of illegal narcotics." *Id.* This is the description of what Officer Lemmons saw when he impermissibly searched Mr. Blasdel's storage unit before obtaining a search warrant. Accordingly, this is the section of the affidavit that must be excised.

We do not have to guess why Officer Lemmons included his own observations of the storage unit instead of describing what the Acorn employees told him they saw in Unit 3992. At the hearing on Mr. Blasdel's motion to suppress, Officer Lemmons testified that police officers get calls all the time alleging that someone is a drug dealer or that a particular substance is methamphetamine and that a "citizen's opinion may be different than [his], so [he] went [into Unit 3992] to confirm." Rec., vol. I at 124. An experienced police officer's assertion that methamphetamine is present is more compelling than a similar assertion from a civilian employee. But, despite guidance from

the district attorney to the contrary, police officers cannot conduct unreasonable searches before obtaining a search warrant in an attempt to ensure that the results of the search warrant will be worth the police department's time to investigate. To permit this would be to undermine the constitutional protections afforded by the Fourth Amendment.

An affidavit in support of a warrant "establishes probable cause if it evinces a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Cotto*, 995 F.3d 786, 796 (10th Cir. 2021) (quoting *United States v. Knox*, 883 F.3d 1262, 1275 (10th Cir. 2018)). For the purposes of a probable cause determination, the affidavit can be supplemented by other testimony presented to the reviewing magistrate before the magistrate decides whether to issue the search warrant. In the absence of additional testimony from the police *before* a search warrant is issued, the court is limited to the four corners of the affidavit when determining whether probable cause existed to support a warrant. *See Knox*, 883 F.3d at 1272; *Hackney, Inc. v. McLaughlin*, 895 F.2d 1298, 1300 (10th Cir. 1990) ("The 'four corners doctrine' limits challenges to the validity of search warrants to review of the materials submitted to the magistrate.") (internal citation omitted). Thus, the affidavit cannot be supplemented, for purposes of a probable cause determination, by additional testimony at a hearing on a motion to suppress. The government cannot use such a hearing as a second chance to clarify what it meant to include or later realized it should have included in the original affidavit. After reviewing the four corners of the affidavit in support of the storage unit search warrant, we hold that once the constitutionally invalid portions of the affidavit are

9

excised, the remaining portions fail to establish probable cause for the search warrant to be issued.

"Even if a court ultimately determines that a warrant approved by a judge falls short of the constitutional requirements of probable cause . . . evidence will not be suppressed if a law enforcement officer relies in objective good faith on a warrant issued by a detached and neutral magistrate." *Cotto*, 995 F.3d at 795. "[A] suppression court's assessment of an officer's good faith is confined to reviewing the four corners of the sworn affidavit and any other pertinent information actually shared with the issuing judge under oath prior to the issuance of the warrant." *Knox*, 883 F.3d at 1272. Accordingly, for the purposes of our good faith determination, we do not consider anything shared with the district court during the suppression hearing.

"We generally presume officers executed a search warrant in objective good faith. This presumption disappears when the text of an affidavit supporting a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid." *United States v. Gaye*, 130 F.4th 865, 872–73 (10th Cir. 2025) (internal citations omitted). In the affidavit in support of the storage unit search warrant, Officer Lemmons spoke in vague generalities about what the Acorn employees saw and communicated to him and to Officer Doyle. The section about what Officer Lemmons personally witnessed was precise and clear, but it was also derived from pre-search-warrant searches that Officer Lemmons knew or should have known were unconstitutionally premature. The affidavit's phrasing is so facially deficient that Officer Lemmons could not reasonably have presumed it to be valid. We hold that the good faith exception does not apply in this

10

case. Accordingly, the evidence resulting from the search of Unit 3992 must be suppressed.

### B. Mr. Blasdel's House

We turn second to Mr. Blasdel's house. "[I]f a search warrant affidavit contains information obtained through a prior, unlawful search, we must . . . excise that information and consider the adequacy of the affidavit anew." *United States v. Mora*, 989 F.3d 794, 799 (10th Cir. 2021).

In the affidavit in support of the application for a search warrant for Mr. Blasdel's house, Officer Lemmons wrote "Affiant states that several pounds of Methamphetamine and stolen firearms were recovered/seized from [Unit 3992]." Rec., vol. I at 46. A few paragraphs later, Officer Lemmons wrote "Affiant states approximately nine firearms were recovered, [Mr. Blasdel] is aware that we were at his storage unit, and is a convicted felon." *Id.* These are the only portions of the affidavit that provide an explanation as to why the reviewing judge should believe there is a fair probability that contraband or evidence of a crime will be found in Mr. Blasdel's house. The portions of the affidavit that explain why Officer Lemmons believes the house he is requesting to search is Mr. Blasdel's residence do not offer any explanation of why there is a fair probability of contraband or evidence of a crime being discovered there. Once we excise the references to methamphetamine and firearms that were discovered because of the storage unit

search, all we are left with is an assertion that Mr. Blasdel is a felon who knows his storage unit was searched by the police. This is not enough to establish probable cause.

The government argues that even if the affidavit for the search warrant of Mr. Blasdel's house lacked sufficient probable cause, police officers reasonably relied upon it in good faith. But "Tenth Circuit precedent dictates that the good faith exception does not apply at all when a warrant affidavit is based on tainted evidence from a prior, unlawful search." *United States v. Loera*, 923 F.3d 907, 926 (10th Cir. 2019). The evidence resulting from the search of Mr. Blasdel's house is fruit of the poisonous tree that must also be suppressed.

### III. Conclusion

For the foregoing reasons, we **REVERSE** the district court's dismissal of Mr. Blasdel's motion to suppress evidence from the searches of his storage unit and house. Mr. Blasdel's conviction and sentence are **VACATED** and his case is **REMANDED** for further proceedings consistent with this opinion.