**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 24, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LEE HOLT, a/k/a Timothy Scott Holt,
a/k/a Lee Scott Holt,

    Defendant - Appellant.

No. 25-5078

_____

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:24-CR-00050-JFH-1)**
_____

Submitted on the briefs:[*]

Julia L. O'Connell, Federal Public Defender, and Stephanie A. Baker, Assistant Federal Public Defender, Office of the Federal Public Defender, Tulsa, Oklahoma, for Defendant-Appellant.

Clinton J. Johnson, United States Attorney, and Thomas E. Duncombe, Assistant United States Attorney, Office of the United States Attorney, Northern District of Oklahoma, Tulsa, Oklahoma, for Plaintiff-Appellee.

_____

Before **TYMKOVICH**, **MURPHY**, and **MORITZ**, Circuit Judges.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

_____

**TYMKOVICH**, Circuit Judge.

_____

Oklahoma law enforcement suspected Lee Holt of selling methamphetamine from his home.  Officers obtained two warrants to search Holt's home: one from a *tribal* court judge, because the home was in Indian Country, and the other from a *state* court judge, because officers believed the non-Indian status of Holt's co-resident supported state jurisdiction.  The tribal judge issued the warrant.  The state judge also did—but only after the agent submitted a revised probable-cause affidavit.  State and tribal officers executed the tribal search warrant and found firearms, ammunition, and drugs in Holt's home.  After the case was referred to federal officials, a federal jury convicted Holt of drug offenses and firearm offenses.  The court sentenced him to fifteen years' imprisonment.

In the district court prior to trial, Holt moved to suppress the contraband found in his home as the fruit of an unlawful search.  Applying the good-faith exception, the court denied the motion.  Holt also moved to compel identification of the government's confidential informant, who helped tie Holt to drug distribution.  The court ultimately denied that motion finding that Holt failed to show identification would assist his trial defense.

On appeal, Holt challenges both decisions by the district court.  He contends the district court erred by denying the motion to suppress because officers could not rely in good faith on the tribal warrant because a state judge had contemporaneously

rejected an identical warrant application. As for the motion to compel, he argues identification of the confidential witness would have assisted him at his suppression hearing.

Exercising our jurisdiction under 28 U.S.C. § 1291, we **AFFIRM** Holt's conviction. Though the district court did not reach the issue of probable cause, we may affirm "on any ground adequately supported by the record," *United States v. Damato*, 672 F.3d 832, 844 (10th Cir. 2012), and we find probable cause supported the tribal court warrant. But even if we did not affirm on that ground, the good-faith exception applies: the officers were entitled to rely on the tribal warrant, notwithstanding the state judge's initial denial of an identical warrant application. Nor did the court err in denying identification of the confidential informant.

## I.     Background

Law-enforcement agents came to suspect Holt's residence of drug activity. Agents had set up a drug buy between a confidential informant and a known methamphetamine dealer. Agents also attached a GPS tracker to the dealer's vehicle. And observing the GPS data, the agents noticed that the dealer made frequent, brief stops at a residence in Collinsville, Oklahoma. The confidential informant confirmed that the drug dealer often "went up the hill" to a house to purchase drugs.

Agent Tara Winter, an officer with the Oklahoma Bureau of Narcotics (OBN), identified the Holt residence as the likely target. She and other agents performed a "trash pull" at the house: they searched a trash bag left for collection on the curb. In the bag, Agent Winter found evidence of drug use: syringes and baggies that field

3

tested positive for methamphetamines. They also found mail addressed to Holt at the residence. Following the trash pull, Agent Winter researched Holt's background. She found an extensive criminal history of drug offenses. She also found that he was a member of the Cherokee Nation.

Relying on this information, Agent Winter sought a warrant to search Holt's residence from both a tribal judge and a state judge. She did so because she believed both the tribe and state might have jurisdiction over the criminal conduct: the residence is located in Indian Country and Holt is a member of the Cherokee Nation—which she believed supported tribal jurisdiction—and Holt's co-resident was a non-Indian—which she believed supported state jurisdiction. The tribal judge issued a warrant. The state judge, however, initially denied a warrant. Agent Winter then supplied more information about the GPS tracking that the agents used to identify the Holt residence as a target location. With that added information, the state judge also issued a warrant. The officers executed the tribal warrant[1] and found substantial evidence of criminal activity. They found drugs, drug paraphernalia, and firearms. The officers eventually referred the case to federal law enforcement, and a grand jury indicted Holt for drug and firearm offenses.

Holt moved to suppress the drugs, drug paraphernalia, and firearms found at his residence. The court denied the motion.

---

[1] The record is unclear whether the officers also relied on the state warrant.

Holt also moved to compel the government to disclose information about the confidential informant. Holt argued that disclosure would assist his defense at trial by allowing him to elicit testimony from the informant about the pre-search investigation by the OBN. R., Vol. I at 44–45. The district court granted the motion. The government moved the court to reconsider its ruling, but with an important caveat: it would not call the informant at trial or otherwise seek to "introduce at trial any evidence" related to the informant. R., Vol. I at 287. Relying on that representation, the district court concluded that disclosure of the informant's identity would be neither relevant nor helpful to Holt's defense at trial. It granted the motion to reconsider.

Holt went to trial. A jury convicted him of several crimes: (1) being a felon in possession of a firearm and ammunition, *see* 18 U.S.C. §§ 922(g)(1), 924(a)(8), (2) possessing methamphetamine with intent to distribute, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), (3) maintaining a drug involved premises, *see* 21 U.S.C. §§ 856(a)(1), 856(b), and (4) possessing a firearm in furtherance of a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A)(i). The court sentenced him to 180 months' imprisonment.

## II.    Discussion

Holt challenges both the denial of his suppression motion and the denial of his motion to compel. We reject both challenges.

### A.    Motion to Suppress

Holt first argues that the agents' Fourth Amendment violation requires suppression.  He contends that the agents lacked a good-faith belief that probable cause supported the warrant, and even if they did, the warrant was not properly issued pursuant to Federal Rule of Criminal Procedure 41.

When reviewing the denial of a suppression motion, "we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Cotto*, 995 F.3d 786, 794–95 (10th Cir. 2021) (quoting *United States v. Sadlowski*, 948 F.3d 1200, 1203 (10th Cir. 2020)).  But we also defer to a magistrate judge's probable-cause finding. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983) (instructing courts to give "deference to the probable cause determinations of magistrates"); *Cotto*, 995 F.3d at 795.  We will therefore affirm the magistrate judge's probable-cause finding so long as the probable-cause affidavit reveals a "substantial basis for concluding that probable cause existed." *United States v. Cooper*, 654 F.3d 1104, 1124 (10th Cir. 2011) (quoting *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001)).

We review de novo the "applicability of . . . the good-faith exception." *Cotto*, 995 F.3d at 795 (citing *United States v. Knox*, 883 F.3d 1262, 1268 (10th Cir. 2018)).

### 1.  Fourth Amendment

The Fourth Amendment guarantees protection from "unreasonable searches and seizures."  U.S. Const. amend. IV.  Unless officers execute a search pursuant to a

6

valid warrant (or satisfy an exception to the warrant requirement), the search violates

the Fourth Amendment. *Cotto*, 995 F.3d at 795. And though issuance of a warrant

may "establish [the] reasonableness" of a search, *id.*, a warrant must be supported by

"probable cause" and "particularly describe[] the place to be searched," U.S. Const.

amend. IV.

We find no Fourth Amendment violation here because the search occurred

pursuant to a valid warrant, which issued with probable cause.[2] Probable cause exists

when a "fair probability" exists "that contraband or evidence of a crime will be found

in a particular place." *Knox*, 883 F.3d at 1275 (quoting *United States v. Soderstrand*,

412 F.3d 1146, 1152 (10th Cir. 2005)). Probable cause "deals with probabilities and

depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366,

370 (2003).

Implicit in the probable cause standard is a nexus requirement—i.e., that a

relationship exists "between suspected criminal activity and the place to be

searched." *United States v. Biglow*, 562 F.3d 1272, 1278 (10th Cir. 2009). And

when the place to be searched is a defendant's home, our nexus analysis takes on a

different hue: it is not enough to show probable cause "that the person is guilty of a

crime"; we require "additional evidence" linking the "defendant's home to 'the

---

[2] The parties do not address whether the warrant was sufficiently particularized. Although the district court denied the motion to suppress because it applied the good-faith exception, we can affirm on any ground apparent from the face of the record. *Damato*, 672 F.3d at 844; *United States v. Margheim*, 770 F.3d 1312, 1325 (10th Cir. 2014). The government urged us in its brief to affirm on the basis of probable cause, and Holt did not meaningfully rebut its request.

suspected criminal activity.'" *Id.* at 1279 (quoting *United States v. Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998)).  That additional evidence often comes in two forms: (1) an officer's statement that "certain evidence—in his or her professional experience—is likely to be found in a defendant's residence," or (2) the court's reasonable inference, based on the government's evidence, that "certain evidence will be found" in the defendant's residence.  *Id.* at 1280.  But "little 'additional evidence' is generally required" to meet the nexus requirement.  *Biglow*, 562 F.3d at 1279.  In short, the probable-cause affidavit must contain enough factual support to show a fair probability that evidence of drug use or trafficking would be found at Holt's residence.

It did.  The affidavit supported the inferences (1) that Holt was engaged in drug use or trafficking and (2) that evidence of his criminal activity would be found in his house.

First, the warrant explained that OBN agents had attached a GPS tracking device to the vehicle of a "known distributor of methamphetamine."  R., Vol. I at 48.  And using the GPS tracker data from that methamphetamine distributor's vehicle, agents identified Holt's residence as a "possible target source of supply for methamphetamine."  R., Vol. I at 48.  Agents then went to Holt's residence, collected a trash bag on the curb, and searched it.  In the bag, they found ample evidence of Holt's suspected drug activity: "[t]wo plastic baggies that contained a residue of a crystal-like substance that field tested positive for methamphetamine" and syringes.

R., Vol. I at 49. With the drug paraphernalia was mail addressed to Holt at this residence.

Agent Winters also confirmed Holt had a previous conviction for "Unlawful Possession of Controlled Dangerous Drug with Intent to Distribute Methamphetamine." R., Vol. I at 50. Of course, "[c]riminal history alone is not enough to support . . . probable cause." *United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) (citing *United States v. Sandoval*, 29 F.3d 537, 542 (10th Cir. 1994)). But—as is consistent with the probable-cause analysis's focus on the totality of the circumstances—criminal history "combined with" factual indicia of criminal activity "can support a finding of . . . probable cause." *Id.* at 1114–15.

The affidavit also contained the "additional evidence" we require to show a nexus between Holt's criminal activity and Holt's residence. In *United States v. Biglow*, for example, we explained how this nexus requirement can be met in drug-crime cases. An agent may represent that in his professional experience, in some circumstances "drug dealers often keep evidence related to their illegal activities at their homes." 562 F.3d at 1283. That observation, we noted, can "provide the 'additional evidence' necessary to establish a nexus between [a defendant's] suspected drug trafficking activities and his residence." *Id.*; *see also United States v. Becker*, 168 F.4th 1337, 1342–43 (10th Cir. 2026) (finding probable cause that a firearm would be found in a home because a "firearm is the type of evidence likely to be kept in a suspect's residence" (quoting *United States v. Alqahtani*, 73 F.4th 835, 844 (10th Cir. 2023))). Agent Winter made that same representation in the affidavit:

"Based on my prior training and experience on controlled dangerous substance investigations, individuals who use and sell dangerous substances often house additional quantities of illegal substances at their residences . . . ."  R., Vol. 1 at 51. And as recounted above, Agent Winters had uncovered meth-positive baggies and syringes in a trash bag on the curb outside the residence.  And the trash bag contained—along with the drug paraphernalia—mail addressed to Holt at the residence, further connecting Holt's residence with criminal activity.  In short, the affidavit provided a substantial basis of probable cause connecting Holt's residence to drug use and trafficking.

Even so, the good-faith exception to the exclusionary rule applies.  The exclusionary rule—a rule "created by" the Supreme Court "to deter future Fourth Amendment violations"—generally requires a court to suppress evidence obtained through a Fourth Amendment violation.  *See Davis v. United States*, 564 U.S. 229, 236 (2011).  But exceptions to the exclusionary rule exist where suppression would "fail[] to yield 'appreciable deterrence'" of Fourth Amendment violations.  *Id.* at 237. The good-faith exception represents one of those scenarios.  Under that exception, the exclusionary rule does not require suppression of evidence "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate."  *United States v. Leon*, 468 U.S. 897, 913 (1984).  Holt does not dispute that Agent Winters and OBN agents searched the Holt residence pursuant to a warrant issued by a

detached and neutral magistrate. Holt instead argues that those agents could not

*reasonably* rely on the tribal warrant.

*Leon* identified several scenarios where an officer cannot be said to reasonably

rely on a warrant. *See United States v. Villanueva*, 821 F.3d 1226, 1236 (10th Cir.

2016). Relevant here, officers cannot reasonably rely on a warrant based on "an

affidavit so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable." *United States v. Wagner*, 951 F.3d 1232, 1243

(10th Cir. 2020) (quoting *Leon*, 468 U.S. at 923). So in assessing the good-faith

exception's applicability here, we ask whether "the underlying documents" were so

"devoid of factual support" that "an officer cannot be said to have relied on them in

good faith." *United States v. Roach*, 582 F.3d 1192, 1204 (10th Cir. 2009) (quoting

*United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005)). An affidavit lacks

sufficient factual support if it "merely states suspicions, beliefs, or conclusions,

without providing some underlying factual circumstances regarding veracity,

reliability, and basis of knowledge." *United States v. Chambers*, 882 F.3d 1305,

1311 (10th Cir. 2018) (quoting *Roach*, 582 F.3d 1204–05).

Holt claims the affidavit was obviously factually deficient, proven by the state

court's initial denial of a warrant. But as we have already recounted, the tribal

affidavit contained sufficient factual material to establish probable cause that

evidence of Holt's drug activities would be found at his residence. And we are not

persuaded that the state judge's contemporaneous denial renders reliance on the tribal

warrant unreasonable. Holt only notes that a well-trained officer would understand

11

that facts missing from the state warrant—omissions that apparently led the state judge to deny the warrant application—were "germane to establishing probable cause." Appellant's Br. at 17. That's true as far as it goes; those facts were relevant to the state judge's probable-cause analysis. But the germaneness of those facts and the state judge's more exacting scrutiny of its warrant application would not imply that "a reasonably well trained officer *would have known* that the search was illegal despite the [tribal judge]'s authorization." *Leon*, 468 U.S. at 922 n. 23 (emphasis added); *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017). At best for Holt, the contemporaneous denial by a more stringent state judge cast doubt on the tribal judge's probable-cause determination.[3] But we do not think it so deeply eroded the tribal judge's probable-cause determination that reliance on the tribal warrant was objectively unreasonable. The state judge's warrant denial simply illustrated the practical fact of a probable-cause analysis: "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause." *Leon*, 468 U.S. at 914.

Moreover, in the context of determining whether an affidavit so lacks indicia of probable cause that reliance on a warrant is unreasonable, "a suppression court's assessment of an officer's good faith is confined to reviewing the four corners of the sworn affidavit and any other pertinent information actually shared with the issuing

---

[3] A footnote in *Leon* explained that one of the relevant circumstances in the good-faith analysis is "whether the warrant application had previously been rejected by a different magistrate." *Leon*, 468 U.S. at 922 n.23.

judge" and "information relating to the warrant application process." *Knox*, 883 F.3d at 1272. Holt has no answer to the government's observation; he filed no reply.

The Fourth Amendment did not require the suppression of evidence found during the search of Holt's residence. Probable cause supported the search warrant, but even if it did not, the good-faith exception applies.

### 2. *Federal Rule of Criminal Procedure 41*

We likewise reject Holt's alternative ground for suppression based on Federal Rule of Criminal Procedure 41(b)(1). As relevant here, Rule 41 provides that only "a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district—has authority to issue a warrant" to search "property located within the district." Fed. R. Crim. P. 41(b)(1). As Holt tells it, suppression is warranted because the agents intentionally did not seek a warrant from a federal magistrate judge even though one was reasonably available.

We evaluate suppression for alleged Rule 41 violations under the *Pennington* framework. *See United States v. Pennington*, 635 F.2d 1387, 1389–90 (10th Cir. 1980). We first ask "whether Rule 41 was in fact violated." *United States v. Krueger*, 809 F.3d 1109, 1113 (10th Cir. 2015). And then, to determine whether suppression is justified, we ask whether the violation "rises to the level of a Fourth Amendment violation." *Id.* at 1114. And if no constitutional violation occurred, we ask whether the violation prejudiced the defendant or was intentionally done. *See id.*

("Unless the defendant can establish prejudice or intentional disregard of the Rule, a non-constitutional violation of Rule 41 will not, by itself, justify suppression.").

Our analysis here ends at *Pennington*'s first step. Officers did not violate Rule 41 because Rule 41 did not apply to the search. Rule 41 applies to searches that are federal in character. *See Sadlowski*, 948 F.3d at 1204 (explaining that when a search is not "sufficiently federal in character," it does not "mandate application of the Federal Rules of Criminal Procedure"). And a search is not federal in character when no federal agents participate in it. *See United States v. Barrett*, 496 F.3d 1079, 1090 (10th Cir. 2007). Agent Winters and the executing officers are not federal officers; they are cross-deputized state and tribal officers. Because this search was not federal in character, Rule 41 did not apply and could not provide a basis for suppression.

\*    \*    \*

Neither Rule 41 nor the Fourth Amendment required the court to suppress the evidence recovered from the search of Holt's residence. The district court therefore did not err by denying Holt's motion to suppress.

### B. Motion to Compel

Holt next argues that it was error for the district court to deny his motion to compel the identification of the government's confidential informant for his trial defense. But he raises a new argument on appeal. He argued in the district court that identification of the government's confidential informant would help his defense at *trial*; on appeal, however, he argues it would have helped him at his *suppression* hearing.

Below, Holt moved to compel identification of the confidential informant by relying on *Roviaro v. United States*. *See* 353 U.S. 53, 60–61 (1957) (compelling disclosure when it would be "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause"). We have explained that *Roviaro* does not require disclosure when "the information sought" from the informant "would be merely cumulative, or where the informant is not a participant in or a witness to the crime charged." *United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990). Holt argued that the government would use information learned from the confidential informant—who identified a source as a known methamphetamine distributor—to establish that Holt was the source's methamphetamine supplier. *See* R., Vol. I at 43–45. He also explained that the informant "would have personal knowledge as to whether Mr. Holt was in fact involved in illicit drug trades." R., Vol. I at 45. Over the government's objection, the magistrate judge granted the motion. The government sought the district court's review of the order. The court agreed with Holt and affirmed the magistrate judge's order.

The government moved the district court to reconsider, and this time, it represented that it did not intend to offer any evidence about the pre-search investigation (which relied on information from the confidential informant) or otherwise call the informant to testify at trial. *See* R., Vol. I at 289–90. In response, Holt argued the government's failure to note that it would not call the informant to

15

testify could not justify the court's reconsideration; he did not argue that disclosure would still help his suppression motion.[4]

But now—for the first time on appeal—he makes that argument. He explains that *Roviaro* considers helpfulness to a defendant's defense in pretrial matters; that knowing the informant's identity would have helped him counter Agent Winter's testimony at the suppression hearing; and that it would have been "determinative as to both the issues of probable cause and good faith." Appellant's Br. at 25. Holt made no such argument below. And even after the government raised his potential forfeiture, Holt did not respond or otherwise point us to a location in the record where he preserved this argument.

The upshot of that failure is waiver. Holt did not preserve below his argument that identification would have assisted him at his suppression hearing; he therefore forfeited that argument. And because he does not invoke plain-error review, he has also waived the argument. *See United States v. MacKay*, 715 F.3d 807, 831 (10th Cir. 2013).

We therefore affirm the denial of his motion to compel.

### III.    Conclusion

For the foregoing reasons, we affirm the judgment.

---

[4] In fact, Holt's suppression hearing had already occurred at this point.